UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LOUIZA R. LEE

CIVIL ACTION

VERSUS

NUMBER 13-705-SDD-SCR

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL
SECURITY

**<u>NOTICE</u>**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, May 12, 2015.

*Stephen C. Riedlinger*

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LOUIZA R. LEE

VERSUS

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL
SECURITY

CIVIL ACTION

NUMBER 13-705-SDD-SCR

**MAGISTRATE JUDGE'S REPORT**

Plaintiff Louiza R. Lee brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner") denying her applications for disability insurance and supplemental security income benefits ("SSI").

Based on the standard of judicial review under § 405(g), a careful review of the entire administrative record as a whole, and the analysis that follows, the Commissioner's decision should be affirmed.

**Standard of Review**

Under § 405(g), judicial review of a final decision of the Commissioner denying disability and SSI benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards. *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Perez v.*

*Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 1422 (1971); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. It is more than a mere scintilla and less than a preponderance. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). Judicial review under § 405(g) does not require that all of the evidence support the ALJ's findings. Even if substantial evidence supports the claimant's position this is not a ground for reversal. As long as the ALJ's finding or decision is supported by substantial evidence in the record as a whole it must be affirmed.[1]

---

[1] Carroll v. Dept. Health, Ed. and Welfare, 470 F.2d 252, 254, n. 4 (5th Cir. 1972) (as long as there is substantial evidence to support the Commissioner's determination, the quantity of evidence submitted by the claimant is irrelevant in terms of judicial review); *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001); *Palimino v. Barnhart*, 515 F.Supp.2d 705, 710 (W.D.Tex. 2007), citing, *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001)(when record as a whole indicates a mixed collection of evidence regarding plaintiff's impairments and their impact, Commissioner's decision is upheld when there is substantial evidence to support it).

In applying the substantial evidence standard the court must review the entire record as whole, but may not reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence are for the Commissioner and not the court to resolve. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

If the Commissioner fails to apply the correct legal standards, or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981); *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981); *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982). Thus, on judicial review the Commissioner's decision is granted great deference, and the decision will not be disturbed unless the court cannot find substantial evidence in the record to support it, or the court finds an error of law was made. *Leggett v. Chater,* 67 f.3d 558, 564 (5th Cir. 1995).

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require

the ALJ to apply a five step sequential evaluation to each claim for benefits. 20 C.F.R. §§ 404.1520; 416.920. In the five step sequence used to evaluate claims the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in Appendix 1 of the regulations; (4) the impairment(s) prevents the claimant from performing past relevant work; and, (5) the impairment(s) prevents the claimant from doing any other work. *Masterson*, 309 F.3d at 271.

Listed impairments are descriptions of various physical and mental illnesses and abnormalities generally characterized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results. For a claimant to show that his impairment matches a listed impairment he must demonstrate that it meets all of the medical criteria specified in the listing. An impairment that exhibits only some of the criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 529-32, 110 S.Ct. 885, 891-92 (1990); 20 C.F.R. §§ 404.1525; 416.925.

The burden of proving disability rests on the claimant through the first four steps. At the fourth step the Commissioner analyzes whether the claimant can do any of his past relevant work. If the claimant shows at step four that he is no longer capable of

performing past relevant work, the burden shifts to the Commissioner to show that the claimant is able to engage in some type of alternative work that exists in the national economy. *Myers*, supra.  If the Commissioner meets this burden the claimant must then show that he cannot in fact perform that work.  *Boyd*, 239 F.3d at 705.

**Background and Claims of Error**

Plaintiff was 44 years of age at the time of the administrative law judge's ("ALJ") decision.[2]  Plaintiff attended regular classes and graduated from high school.  Plaintiff worked in the past as a cashier, clothes sorter and stocker, and held various jobs in restaurants.  In her May 2011 applications for disability and supplemental security income benefits, the plaintiff alleged that she became disabled and no longer able to work as of December 2010 because of sarcoidosis and a spot on the brain.  AR pp. 12, 15, 28-31, 120-30, 157-65, 170.

After her application was denied at the initial stages, the plaintiff requested an ALJ hearing, after which the ALJ issued an unfavorable decision.  AR pp. 12-46.  The ALJ found at the second step that the plaintiff had the following severe impairments - sarcoidosis and epilepsy.  AR p. 14.  At the third step the ALJ concluded that the plaintiff's combination of severe impairments

---

[2] Plaintiff's age placed her in the category of a "younger person." 20 C.F.R. § 404.1563(c); § 404.1563(c).

did not meet or medically equal the severity of any listed impairment.

The ALJ then evaluated the plaintiff's residual functional capacity ("RFC") to determine whether, despite her severe impairments, the plaintiff was able to do any of her past relevant work or other work in the national economy.[3] After consideration of the entire record, the ALJ found the plaintiff had an RFC to perform light work, but also had environmental restrictions consisting of no work with exposure to hazards, dangerous machinery, or heights, and no exposure to pulmonary irritants. AR p. 15. Given this RFC, and based on the testimony of the vocational expert, the ALJ concluded that the plaintiff would be able to perform her past relevant work as a clothes sorter. AR pp. 19, 44-46.[4] Therefore, at the fourth step the ALJ concluded the plaintiff is not disabled.

In her appeal memorandum the plaintiff argued the following errors by the ALJ require reversal and remand under sentence four of § 405(g): (1) the ALJ failed to properly consider the opinions of consultative examiner and psychologist, Scuddy F. Fontenelle,

---

[3] Residual functional capacity is a measure of a claimant's capacity to do physical and mental work activities on a regular and sustained basis. It is the foundation of the findings at steps four and five. 20 C.F.R. §§ 404.1545; 416.945.

[4] Plaintiff exhausted her administrative remedies before filing this action for judicial review. The ALJ's decision is the Commissioner's final decision for purposes of judicial review.

6

III, Ph.D.; (2) the ALJ erred in failing to make a specific finding that the plaintiff could work on a regular and sustained basis; (3) the ALJ had a duty to recontact the plaintiff's treating physicians for clarification of the impact of neuro-sarcoidosis on her ability to work; and, (4) the ALJ failed to properly consider plaintiff's sarcoidosis in assessing her RFC, and consequently the RFC finding was not supported by substantial evidence.[5]

**Analysis**

Plaintiff's first claim of error concerned statements made in the August 26, 2011 report of Fontenelle's consultative psychological evaluation. AR pp. 257-59. Plaintiff acknowledged that his report did not diagnosis her with any mental impairments. However, plaintiff argued the ALJ failed to properly consider Fontenelle's report because the ALJ did not explain what weight he

---

[5] In connection with her appeal the plaintiff submitted two attachments that are not a part of the administrative record. Record document number 7-1, Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV-TR); record document number 7-2, Global Assessment of Functioning (GAF) Scale for neurosarcoidosis.
  It is well established that in cases brought under 42 U.S.C. §405(g), evidence outside of the administrative record is generally inadmissible, and on judicial review the court cannot consider evidence that is not already a part of the administrative record. *Lovett v. Schweiker*, 667 F.2d 1,2 (5th Cir. 1981); *Flores v. Heckler*, 755 F.2d 401, 403 (5th Cir. 1985). In light of this standard the attachments were not considered. Plaintiff did not argue that this information constituted new and material evidence supporting a remand under sentence six of § 405(g). *See, Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

7

gave to Fontenelle's opinions as required by SSR 96-6p,[6] and the ALJ failed to adopt and include in the RFC several statements Fontenelle made in the report. Plaintiff maintained the ALJ should have included in the RFC finding the following aspects of the report - below average memory function, euthymic mood, constricted social adaptive skills, and a Global Assessment of Functioning ("GAF") score of 50.[7]

Review of the record as a whole demonstrates the ALJ applied the proper legal standards in assessing Fontenelle's report. As explained by the Commissioner, it is apparent from the ALJ's decision that the ALJ cited and applied the correct legal standards. It is also clear from the ALJ's analysis that he chose not to credit all aspects of Fontenelle's report, such as those statements cited by the plaintiff.[8] This is the role of the ALJ -

---

[6] The ALJ stated on page 15 that he considered "opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p. Social Security Ruling 96-6p, 1996 WL 374180 (S.S.A. July 2, 1996), is a policy interpretation ruling to address consideration of administrative findings of fact by state agency medical and psychological consultants, and other program physicians and psychologists at ALJ and Appeals Council levels of administrative review.

[7] The GAF is a standard measurement scale used to rate an adult individual's overall functioning with respect to social, occupational, and physiological functioning. A score of 41-50 reflects serious symptoms, and serious impairment in social, occupational, or school functioning. *Boyd*, 239 F.3d at 700 n. 2 (5th Cir. 2001); *Henderson v.* Colvin, 520 Fed.Appx. 268 (5th Cir. 2013); *Vaughn v. Colvin,* 2014 WL 5303003 (5th Cir. Oct. 17, 2014).

[8] AR pp. 15-19.

to consider and weigh the evidence as a whole and resolve conflicts in the evidence. Here, substantial evidence clearly supports the ALJ's decision not to credit the GAF score, or include limitations on the plaintiff's ability to work because of problems with memory, mood, and social skills. These statements and findings were not consistent with the other parts of Fontenelle's report, other objective evidence in the record, and the plaintiff's testimony. To the extent the ALJ erred by not specifically stating in his analysis what weight he gave to Fontenelle's report or the opinions contained in it, the error is harmless.[9]

Plaintiff also argued that it was legal error for the ALJ not to recontact her treating physicians for clarification regarding the impact of her neurosarcoidosis on her ability to sustain work-related activities.[10]

The regulation relied on by the plaintiff, 20 C.F.R. §§ 404.1512(e); 416.912(e) provides in relevant part:

---

[9] *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988); *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988); *Newton*, 209 F.3d at 459, citing, *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981); *Shave v. Apfel*, 238 F.3d 592, 596-597 (5th Cir. 2001); *Frank*, 326 F.3d at 622 (procedural perfection in administrative proceedings is not required; judgment will not be vacated unless the substantial rights of a party have been affected; procedural improprieties constitute a basis for remand only if they would cast into doubt the existence of substantial evidence to support the ALJ's decision; harmless error analysis applies when an ALJ fails to comply with a regulation).

[10] Record document number 7, Memorandum in Support of Plaintiff's Appeal of the Commissioner's Denial of Social Security Disability Benefits, p. 9.

> (e) *Recontacting medical sources.* When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.
>
> (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

However, at the time of the ALJ hearing and decision this regulation was no longer in effect. Effective in March 2012, the regulation containing the subsection on recontacting medical sources, 20 C.F.R § 404.1512 and § 416.912, was amended to eliminate recontacting as a requirement. Therefore, the current regulation no longer contains paragraph (e), "Recontacting medical sources." The purpose of the change was to give adjudicators more flexibility in determining how to best obtain information, with the goal of making disability determinations more quickly and efficiently. 77 FR 10651-01, 2011 WL 7404303 (F.R. Feb. 23, 2012). Under the revised regulations the ALJ may recontact the medical source if the ALJ has insufficient evidence to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1520b(c); 416.920b(c); *Jones v. Colvin*, 2015 WL 631670 (N. D. Tex. Feb. 13, 2015).

Even if the prior or present version of this regulation was applicable, a plain reading shows that the duty to further develop

the record by recontacting medical sources arises only when the evidence received is inadequate to determine whether the claimant is disabled, and there is insufficient objective and opinion evidence in the record from treating and other sources.  Plaintiff did not argue or demonstrate that the present record was inadequate or the evidence was insufficient.[11]  Furthermore, the plaintiff's did not show that any prejudice resulted from not recontacting any of her treating sources.[12]  Plaintiff offered no suggestion as to what additional information or records could have been provided that would have had any effect on the ALJ's decision, or that such information or records they even exist.[13]  In summary, the plaintiff failed to demonstrate the ALJ had a duty to recontact any of her treating physicians, and even if the ALJ erred by not recontacting them, the plaintiff did not establish she was prejudiced by the error.

Plaintiff cited and relied on *Watson v. Barnhart*[14] and certain portions of the record to support the argument that the evidence in this case required the ALJ to make a specific finding that she was

---

[11] *Stevenson v. Astrue,* 2014 WL 1326387 (S.D. Miss. March 31, 2014).

[12] *See*, *Jones v. Astrue*, 691 F.3d 730, 733-34 (5th Cir. 2012); *Cornett v. Astrue*, 261 Fed.Appx. 644 (5th Cir. 2008); *Taylor v. Commissioner of Social Security*, 2014 WL 4678844 (W.D. La. Sept. 18, 2014).

[13] *Id.*

[14] 288 F.3d 212 (5th Cir. 2002).

11

able to sustain employment. As explained and clarified by the Fifth Circuit in *Frank v. Barnhart*[15] and *Perez v. Barnhart*,[16] nothing in *Watson v. Barnhart*, suggests that in every case the ALJ must make a specific finding regarding the claimant's ability to maintain employment. Such a finding is generally implicit in the assessment of the claimant's residual functional capacity.[17] An explicit finding that the claimant can maintain employment is not required, unless there is evidence in the record that the claimant's condition waxes and wanes in its manifestation of disabling symptoms. Plaintiff failed to point to evidence which demonstrates that the ALJ was required to make a specific finding that she could maintain employment. Plaintiff cited evidence in the record related to memory problems, confusion and weakness, and a statement by Fontenelle that she "may have difficulty maintaining full time employment." AR p. 259. The evidence cited by the plaintiff consists of either her subjective complaints or is based on her subjective complaints. Moreover, none of the evidence the plaintiff relied on, nor any objective evidence in the record, shows that the plaintiff's symptoms from her impairments have

---

[15] 326 F.3d 618 (5th Cir. 2002); *Dunbar v. Barnhart*, 330 F.3d 670 (5th Cir. 2003).

[16] 415 F.3d at 465.

[17] By definition, residual functional capacity is a measure of a claimant's capacity to do physical and mental work activities on a regular and sustained basis. 20 C.F.R. §§ 404.1545 and 416.945; SSR 96-8p.

12

frequent periods of increasing/decreasing severity,[18] such that the ALJ was required to make a separate determination that the plaintiff was not only capable of substantial gainful activity but also able to maintain employment, i.e., hold a job for a significant period of time.[19]

Finally, the plaintiff argued that the ALJ's RFC finding was not supported by substantial evidence. Plaintiff's argument with regard to the RFC finding is similar to the argument made with regard to Fontenelle's report. Plaintiff claims the ALJ ignored the non-respiratory symptoms of her sarcoidosis, such as confusion, headaches and fatigue, and their effects on her ability to do work-related activities.

Plaintiff's argument is unsupported. The record demonstrates that the ALJ did not ignore these symptoms. He considered the evidence related to all symptoms, including these, but found that the objective medical and other evidence did not provide a basis to find that they limited the plaintiff's functioning. This conclusion and the RFC finding are supported by substantial

---

[18] *Perez,* 415 F.3d at 465 (plaintiff's testimony that he had good days and bad days, or that his pain waxes and wanes, insufficient to establish factual basis requiring ALJ to make a separate finding the plaintiff was able to maintain employment).

[19] "*Watson* holds that in order to support a finding of disability, the claimant's intermittently recurring symptoms must be of sufficient frequency or severity to prevent the claimant from holding a job for a significant period of time." The claimant must establish the factual predicate required by *Watson* to necessitate a separate finding. *Frank*, 326 F.3d at 619-20.

13

evidence. For example, the report of the consultative examination of Dr. Janet B. Higgins reflected an essentially normal physical examination in terms of the plaintiff physical exertional capacity, as well as normal spirometry test results. AR pp. 236-45. State agency medical consultant Dr. Emily Eisenhauer also assessed the plaintiff's residual functional capacity. In her assessment dated August 9, 2011 she found that the plaintiff would be able to: occasionally lift, carry and pull up to 20 pounds; frequently lift, carry and pull 10 pounds; stand and/or walk (with normal breaks), about 6 hours in an 8 hour work day; and, sit (with normal breaks) about 6 hours in an 8 hour work day.[20] Because of the sarcoidosis and history of seizures, the plaintiff had to avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and exposure to hazards such as machinery and heights. AR pp. 57-59.

With regard to the plaintiff's claims of mental impairments caused by sarcoidosis, such as problems with memory and confusion, substantial evidence supports the ALJ's determination not to include these limitations in his RFC finding. Both the report of state agency psychological consultant Lisette P. Constantin, Ph.D.,

---

[20] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b); 416.967(b). These findings are consistent with this definition.

14

and Fontenelle's report showed the plaintiff had no diagnosed mental impairment. AR pp. 54-57, 257-59. In his psychological evaluation, Fontenelle reported the following: (1) plaintiff was able to provide relevant and valid information about her health problems and medical history; (2) plaintiff had a good level of motivation, cooperation, alertness and responsiveness; (3) plaintiff's thoughts were focused, oriented and reality based; (4) there was no evidence of personality or mood disturbance; (5) plaintiff had fair mental concentration and alertness, and low average short and long term memory; (6) plaintiff had good personal insight, social reasoning and problem solving skills; and, (7) plaintiff was able to follow and understand routine job instructions.

Plaintiff's testimony and statements about her activities also support the ALJ's finding. Plaintiff testified that she takes care of her four year old grandchild and has been taking care of him since he was born, including helping him get ready for school, with his homework, and attending his school conferences. Plaintiff also stated that she cleans the house, grocery shops with her mother, carries light bags, and can comfortably stand for two to three hours. Plaintiff reported she was collecting unemployment after being laid off from her last job,[21] and stated that she felt

---

[21] This job involved stocking and hanging clothes at "Goodwill," which the court assumes refers to a Goodwill Industries
(continued...)

she could return to her job as a clothes sorter and as a kitchen helper. AR pp. 29-33, 35-37.

All of the evidence above constitutes substantial evidence to support the ALJ's RFC finding. Given this RFC finding and based on the testimony of the vocational expert at the administrative hearing, the ALJ determined at the fourth step that the plaintiff would be able to do the job of clothes sorter that she had performed in the past, as that job is actually and generally performed in the national economy.[22] AR pp. 19, 44-46. This vocational evidence provided substantial evidence corroborating the ALJ's conclusion at step four that the plaintiff could perform this past work and is not disabled.

**Conclusion**

Whether the plaintiff has been diagnosed with sarcoidosis, neurosarcoidosis, or seizures is not the dispositive issue. Disability within the meaning of the Social Security Act is not based on a diagnosis. Rather, disability is established when the

---

[21](...continued)
International, Inc., store. Receipt of unemployment benefits can be a factor in discounting a claimant's credibility. *See*, *Taylor v. Colvin*, 2013 WL 5290549 (N.D.Tex. Sept. 19, 2013).

[22] Under §§ 404.1560(b)(2) and 416.960(b)(2) and the case law it is well-established that a determination of whether a claimant can do his or her past relevant work may rest on descriptions of past work as actually performed or as generally performed in the national economy. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990); *Khawaja v. Shalala*, 20 F.3d 1170 (5th Cir. 1994); *Alexander v. Astrue*, 412 Fed.Appx. 719 (5th Cir. 2011).

claimant's medically determinable impairments or combination of impairments causes functional limitations that prevent the performance of substantial gainful activity.

The analysis above demonstrates that the ALJ's finding at the fourth step that the plaintiff's severe impairments did not preclude her from engaging in substantial gainful activity is supported by substantial evidence.  The ALJ also applied the proper legal standards in reaching his decision.  Plaintiff's claims of reversible error are without merit.

## **RECOMMENDATION**

It is the recommendation of the magistrate judge that, under sentence four of 42 U.S.C. § 405(g), the final decision of the Acting Commissioner of Social Security Carolyn W. Colvin denying the applications for disability and supplemental security income benefits filed by plaintiff Louiza R. Lee be affirmed and this action be dismissed.

Baton Rouge, Louisiana, May 12, 2015.

*[signature: Stephen C. Riedlinger]*

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE